The opinion of the Court was delivered by
Wardlaw, Oh.
Thomas Godbold, by his will, gave to his wife certain lands and chattels and one-seventh of his slaves, and to his daughters certain pecuniary legacies, and to each of his six children one-sixth of the residue of his estate. As to the portion given to the wife for life, the will makes further provision in the following terms: “ It is my will and desire, that all the property I have loaned to my wife for her natural life, after her decease for it to be equally divided among my surviving heirs, share and share alike ; also all the property that I have loaned to my sons and daughters before mentioned, after he, she or they depart this life, the portion allotted to he, she or they shall go to the lawful issue of their bodies ; and if .either of my children shall depart this life, leaving no lawful issue of their bodies, then the whole of that part of my estate allotted to he, she or them should be equally divided among my surviving heirs.” Elizabeth Monroe, daughter of the testator, survived him, but died in the lifetime of the widow, tenant for life, leaving five *35 children yet living; and the controverted question in this case is, whether these grand-children are entitled to any share of the estate given to the widow for life.
It cannot be disputed that if Thomas Godbold had died intestate at the date of his wife’s death, Mrs. Monroe’s children would' have been among his immediate heirs as representing their mother. The 2d clause of the 1st section of the Act of 1791 (5 Stat. 162) provides that “The lineal descendants of the intestate shall represent their respective parents, and be entitled to receive and divide equally among them the shares to which their parents would respectively have been entitled, had they survived the ancestor.” By the common law of England, the term heirs means, (with exceptions as to cases of coparce-nary and gavelkind, &c.,) the persons who singly and successively inherit the real estate; but in South-Carolina it cannot mean, except as .to estates without our statutes of distribution, anything more than distributees, or hceredes facti under these statutes. Seabrook vs. Seabrook, McMul., Eq. 205 ; Templeton vs. Walker, 3 Rich. Eq. 543. Even in England, when ‘heirs’ is applied by a testament to personal property, it is understood to designate the next of kin, as they are the only persons entitled by the statute of distributions in that nation to succeed to that kind of estate. Holloway vs. Holloway, 5 Ves. Jr, 399. Vaux vs. Henderson, 1 Jac. & Walk. 388, n. With us, the succession to personalty and the inheritance of realty, proceed to the same persons; and heirs universally means, as to estates to which decedents are beneficially entitled, the persons entitled to distribute among them the estate of an intestate. Testators may employ heirs as a word of purchase and not of limitation; and where they employ it as a.word of purchase, they may add' other ingredients or qualifications, and the devisees must answer the description in all particulars. Thus, although the established doctrine is, that whoever claims to inherit under a gift to heirs male, must convey his descent wholly through heirs male, it is otherwise where heirs male take by purchase. If lands be devised to A. for life, and after his decease to the *36 heirs male of the body of B., and B. has a daughter who dies in the lifetime of her father and of the tenant for life, leaving a son who survives both A. and B., this grand-son shall take the estate, as he fulfils the description as to heirship and sex, of being the heir male of B. Co. Litt. 25; Hobart, 31; 2 Jarm. 9. So in the present case, persons claiming the estate of the testator given to the widow for life, must bring themselves within the description of heirs of testator surviving the widow. Unquestionably it is competent for a testator, if he thinks fit, to limit any interest to such persons as shall at a particular time sustain a particular character. Thus, in the present instance, the testator might have given his estate to such persons as would have been his heirs if he died intestate at the date of his wife’s death; and the only debateable point is, whether he has expressed the intention so to give.
This Court is satisfied with the conclusion of the Chancellor, upon the argument and authorities contained in the circuit decree, that the persons intended to take, under the disposition in question, are such only as fulfil the description of objects at the termination of the precedent life estate. It remains for us to enquire, what objects at that epoch are designated by the testator under the terms “ my surviving heirs.”
When a testator uses a technical term, he is presumed to use it in its technical sense, unless a special intent to the contrary is manifested by the context. The testator here must be presumed to employ the term heirs to designate those persons who would have been entitled to his estate by succession and inheritance, under the statutes of distribution, upon the death of his wife, unless he has exhibited in other portions of his will his intention to use the term in the sense of children. It is not pretended that testator, in any part of his will, employed the term heirs in a popular and deflected sense, except that in directing division of the residue of his estate into six equal parts among his six children, he says that the first allotment shall be “ for the eldest heir, my son Hugh Godbold.” The will is inarti-ficially drawn, and the testator was probably inops consilii. It *37 may be that he had some vague notion of the right of primogeniture, as still existing. However this may be, he corrects the ambiguity of the phrase ‘ eldest heir,’ applied to the eldest son, by adding in immediate sequence ‘my son Hugh Godbold.’ This shows that he did not consider 'eldest heir’ as unequivocally describing his eldest son; and the phrase taken altogether does not justify the inference that testator confounded heirs with children. In all the other portions of his will, the testator describes his children by the terms sons and daughters, and nowhere manifests his ignorance of the technical import of heirs. Take, for example, the whole of the clause connected with the present contest, which clause is cited near the beginning of this opinion. In this clause, the testator carefully distinguishes heirs from sons and daughters and children, and manifests his purpose of bounty to the issue of his children. In Packham vs. Gregory, 30 Eng. C. R. 396, (a) Sir James Wigram says: “ I will not without reason adopt a construction which would or might be attended with the consequence, if one legatee should die during the tenancy for life leaving issue, of excluding that branch of the objects of testator’s bounty. The consequence of disinheriting issue is one ground on which the Court seeks, if it can, to avoid a construction attended with it.”
It is properly suggested in the circuit decree, that the term ‘surviving’ in application to heirs of testator, would be unmeaning if referred to heirs at testator’s death. In that case, heirs standing by itself would have precisely the same meaning as surviving heirs. But it is not true that ‘ surviving heirs ’ is a mere pleonásm when referred to survivorship at the ‘death of the tenant for life. Without the use of it, the heirs of testator at his death would have taken a vested interest, transmissible to their representatives, and widowers and widows of the children, not heirs of the testator, would have taken shares. Leeming vs. Sherratt, 24 Eng. C. R. 14; Bankhead vs. Carlisle, 1 Hill, Ch. 358. Heirs of the same person may be very different individuals at different epochs. In Buist vs. Dawes, 4 Strob. *38 Eq. 38 ; 4 Rich, Eq. 415, in note, where, after precedent particular estates, the estate, real and personal, was given contingently to J. S. in fee, who died during the subsistence of the particular estates, it was held that those persons who were the heirs and dis-tributees of J. S. at the time of his death, and not different individuals who were his heirs at the falling in of the estate for enjoyment, were entitled to his estate by descent and succession. Hicks vs. Pegues, 4 Rich. Eq. 413. The converse is a corollary from this doctrine ; and if his heirs at the termination of the particular estate, be designated by a testator as purchasers of the remainder, they take in exclusion of heirs at his death. The grand children in the present case claim as heirs of the testator, and not of their mother — in substitution of the parent, and not through her. If the devise had been to children of the testator who might survive his widow, it may be granted that the devise would have been contingent upon their survivorship of the widow, and that children dying in her life time were not devi-sees of any transmissible interest, and that it could not be ascertained until her death who were the devisees. But the actual devise is to surviving heirs and not to children, and grand-children are heirs of the testator. Still under the description of heirs they take by purchase, and not by descent.
It is argued, that testator means children by the term heirs, because when his will was written children were his heirs apparent, and at his death children were his only heirs. This is not strictly true in point of fact, for his widow was one of his heirs. Passing this by, why should testator be supposed to speak exclusively of the state of things existing at his death 1 He certainly directs division of this portion of his estate to be made at a future, fixed yet indefinite, time, and among objects who should then fulfil the description; and it seems illogical to argue that he did not contemplate any change in the heirship by future contingencies. He could hardly have reasoned that because children were his heirs at his death, children must be his only surviving heirs at the death of his widow. Whenever one disposes of his estate by gift in futuro, the terms of dona *39 tion naturally receive construction and application according to the state of things when the disposition takes effect.
A very perplexing question might have been involved in this case as to the extent of the shares of the grand-children, when allowed to come in under the description of heirs. The Court of Errors, in Templeton vs. Walker, 3 Rich. Eq. 543, established the doctrine, that wherever resort must be had to the statutes of distribution to ascertain the objects of gift, the statutes must also determine the shares of the donees, unless the instrument of gift indicates that a different distribution shall be made. The statute of 1791 provides that grand-children shall take among them the share to which their parent, if surviving, would have been entitled; but here the testator provides that his surviving heirs shall take equally, and share and share alike.
It is unnecessary to determine in this case, whether the grandchildren come within the general rule or within the exception, inasmuch as by their pleadings and through their counsel here, they claim among them no more than the share to which their mother would have been entitled if she had survived the life tenant. No fair argument, however, as to the meaning of testator in this donation can be founded on the assumption of a conclusion doubtful in itself, that upon our construction the grandchildren must take per capita with the children of testator. If this result follow, it is only because we interpret the testator as expressing his intention to this effect, whether ignorantly or wilfully. It would afford, at most, another of many instances in which the conjectured intention of testators is defeated by adherence to settled rules of construction, framed to define the general intention of testators, and prevent the necessity of bringing the construction of every will into litigation. It is for the good of the State that such general rules should prevail, and that every case should not depend on its circumstances and the flexible discretion of the tribunal.
It is adjudged and decreed, that the children of Mrs. Monroe are entitled to take among them the share in the estate devised *40 to Sarah Godbold for life, which their mother would have taken if she had survived said tenant for life.
It is further ordered that the circuit decree be modified in this particular, and in all other respects be affirmed.
Johnston and Dunkin, OC., concurred.

 4 Hare, 396.